# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| MILES PROPERTIES, INC., *et al.*, | ) | CASE NO. 10-60797 - MHM |
| | ) | Jointly Administered |
| Debtors. | ) | |

**EMERGENCY MOTION OF DEBTOR MILES PROPERTIES, INC. FOR (I) INITIAL ORDER (A) ESTABLISHING BIDDING PROCEDURES, (B) APPROVING FORM OF ASSET PURCHASE AGREEMENT, (C) AUTHORIZING BREAK-UP FEE AND REIMBURSEMENT OF BUYER EXPENSES, (D) APPROVING FORM AND MANNER OF NOTICE, (E) SCHEDULING AUCTION AND FINAL HEARING ON APPROVAL OF SALE, AND (F) SHORTENING NOTICE PERIOD FOR SALE; AND (II) ENTRY OF A FINAL ORDER AUTHORIZING THE SALE, ASSUMPTION AND ASSIGNMENT OF DEBTOR'S MANAGEMENT CONTRACTS PURSUANT TO 11 U.S.C. §§ 363 AND 365**

Debtor Miles Properties, Inc. ("Debtor" or "MPI"), by and through undersigned counsel, moves the Court for the entry of: (i) an initial order (a) establishing bidding procedures, (b) approving form of asset purchase agreement, (c) authorizing the reimbursement of purchaser's expenses and break-up fee, (d) approving the form and manner of notice, (e) scheduling an auction, if necessary, and a final hearing on approval of sale, and (f) shortening the notice period for the sale; and (ii) a final order authorizing the sale, assumption and assignment of Debtor's management contracts comprising substantially all assets of Debtor, AS IS, WHERE IS, AND WITH ALL FAULTS, free and clear of liens, claims, liabilities, encumbrances or other interests, if any (the "Sale").

In support of this motion (the "Sale Motion"), Debtor respectfully represents as follows:

## I.    Background

1.    On January 8, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.    Debtor is operating its business and managing its affairs as debtor in possession.  11 U.S.C. §§ 1107(a) and 1108.

3.    Pursuant to certain existing property management agreements, Debtor operates as fee-for-services manager of numerous residential apartment complexes throughout the United States owned by certain of its affiliates, including certain of the captioned Debtors, *i.e.*, MPI Azalea, LLC, Miles-Cherry Hill, LLC, Miles-Oak Park, LLC, Miles-Fox Hollow, LLC and Miles-April Ridge, LLC, as well as those non-debtor affiliates that are not part of this or any other bankruptcy proceeding (collectively, the "Management Contracts").  All of the Management Contracts constitute "property of the estate" within the meaning of section 541(a) of the Bankruptcy Code.

4.    Debtor has no secured creditors.

## II.    Proposed Purchase and Sale of Management Contracts

5.    Debtor has been actively marketing and soliciting offers from a range of potential purchasers for a sale and assignment of the Management Contracts to ensure that Debtor derives maximum value from the Management Contracts.

- 2 -

6.     Debtor believes it would be in the best interest of creditors and the estate to sell and assign the Management Contracts at an auction to the highest bidder (the "Auction").   Carroll Property Management, LLC ("Carroll" or the "Stalking Horse Bidder") has agreed to serve as and shall be deemed the stalking horse bidder to purchase the Management Contracts pursuant to an Asset Purchase Agreement entered into as of August 2, 2010 by and between Debtor and Carroll (the "APA"[1]).

7.     Subject to this Court's authorization for Debtor to close under the APA and complete the transactions contemplated thereby, and upon the terms and subject to the conditions contained in the APA, Debtor shall sell, assign and transfer to Buyer, and Buyer shall purchase, assume and acquire from Debtor, free and clear of Liens (but subject to Assumed Obligations), all of Debtor's right, title and interest in and to the Management Contracts identified in Exhibit A to the APA (as such exhibit may be updated by Debtor to reflect changes, if any, in Managed Properties between the Effective Date and Closing, "Acquired Contracts"), together with (a) all files, papers, copies of computer files, resident lists and records, advertising materials, promotional materials, budgets and reserve studies, reports and accounting and business records of Debtor in any medium relating to the Managed Properties (subject to Debtor's rights to

---

[1] A true and correct copy of the APA is attached hereto as **Exhibit "A."** The Court and parties in interest are respectfully directed to the APA for a complete recitation of the terms and conditions thereof, only a summary of which are set forth in this Motion. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the APA.

access such files and records under Section 5.10 of the APA); and (b) all cash in the operating or reserve accounts pertaining to the Managed Properties as of the Closing (except for cash or credits comprehended within the Excluded Assets), and to the extent transferable, Debtor's rights, if any, with respect to all deposits posted as of the Closing with the Property Owners, utility companies, vendors or suppliers relating specifically to the Managed Properties (collectively, with the Acquired Contracts, "Acquired Assets").

8.      Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in the APA, the following assets (the "Excluded Assets") are not part of the sale and purchase contemplated thereunder, are excluded from the Acquired Assets, and shall remain the property of Debtor after the Closing:

(a)     all deposits for utilities, telecommunications and services or facilities pertaining directly to Debtor's corporate office;

(b)     the security deposit for Debtor's corporate office lease;

(c)     all deposits pertaining to flexible spending accounts established for Debtor's employees;

(d)     all amounts constituting security retainer deposits held by third-person consultants, contractors, attorneys, or other professionals with respect to Seller or Debtor or Property Owner obligations to such third-persons;

(e)     all deposits posted with Debtor in connection with executory sales of Properties;

- 4 -

2927745-10

(f)     all rights of Debtor under any insurance policies maintained by Debtor relating to the Business or Properties that are not subject to Acquired Contracts;

(g)     all tax refunds or rights to tax refunds of Debtor for the period up to Closing and all of Debtor's rights and claims against third persons that have arisen or accrued at any time through Closing;

(h)     all of Debtor's rights under the APA, including but not limited to rights relating to the Purchase Price;

(i)     all accrued but unpaid amounts earned by or payable to Debtor as of Closing, as management fees under all Acquired Contracts for all periods up to the Closing Date, and amounts allocable to Debtor as corporate overhead consistent with Debtor's and the Property Owners' reasonable past practice and accounting standards, including allocations for insurance, payroll and benefits; and Debtor's other accrued rights to cash and cash equivalents deriving from the Management Contracts for all periods up to and including the Closing, and amounts determined to be due for employee severance pursuant to Section 2.7 of the APA, if any; all of the foregoing being subject to proration as of the Closing Date, and subject to agreement to be confirmed during the Due Diligence Period relative to post-Closing remittances from the Property Owners (or from Buyer on behalf of the Property Owners), of accrued but unpaid management fees and corporate overhead

- 5 -

allocations (referred to as Seller Arrearages) as provided more fully in Section 2.3 of the APA;

(j)     all claims and avoidance recovery, subordination or other actions arising out of the commencement of the Bankruptcy Case, including without limitation those arising under Sections 506, 510, 542-551 and 553 of the Bankruptcy Code;

(k)     cash collateral, deposits or other collateral security held by or for the benefit of Debtor, except as assigned pursuant to Section 2.1 of the APA, or any lender of Seller or a Debtor;

(l)     software licenses that are not transferrable or that do not pertain to Acquired Assets;

(m)     tax losses allocated to Debtor as of Closing;

(n)     disposition fees payable to Debtor by Property Owners or third-party buyers for Properties under contract for sale prior to Closing and disposed prior to Closing, or from and after Closing;

(o)     rehabilitation fees payable to Debtor by Property Owners for Properties in respect of which repair, maintenance or renovation work has been undertaken by Debtor for any periods up to and including Closing, as described in Schedule 2.2 o of the APA (which schedule will be updated as changes warrant);

- 6 -

2927745-10

(p) the Contract with non-debtor MPI Cedar Pointe, LLC for the management of the Regal Canyon Property;

(q) all other assets and any property of the estate of Debtor not expressly included as an Acquired Asset.

### III. <u>Purchase Price</u>

9. The initial cash purchase price for the Acquired Assets will be $300,000 in immediately available funds, the assumption of the Assumed Obligations at Closing, plus the assumption and agreement to pay in the future the Fee-Based Payments, as defined below (collectively, the "Purchase Price"). The Purchase Price (less the Escrow Funds paid to Debtor as a deposit under the APA) will be paid in immediately available funds at Closing to an account designated by Debtor. Buyer also shall assume at Closing and agree to perform the Assumed Obligations.

10. Carroll shall pay to Debtor in cash at Closing the amount of Three Hundred Thousand and No/100 Dollars ($300,000.00) (the "Cash Payment"), subject to certain adjustments set forth in Article 3 and elsewhere in the APA. At Closing, Carroll also shall assume the Assumed Obligations and assume and contract to pay Debtor, on a monthly basis, an amount equal to thirty percent (30%) of the Management Fees under each and every one of the Acquired Contracts for the remaining duration of each such Acquired Contract (collectively, the "Fee-Based Payments"). "Management Fees" shall mean all gross revenues earned by the manager under each Acquired Contract for each

- 7 -

month during the remaining term of the Acquired Contracts from and after Closing, less

accounting fees payable by Carroll to Hediger Enterprises, Inc. ("Hediger") equal to $4

per Managed Unit per month, for the duration of the Acquired Contracts for each

Managed Unit ("Agreed Accounting Fees").  Management Fees do not include the post-

Closing Property disposition fees payable to Debtor by Property Owners (if any such fees

become due pursuant to the relevant agreements between Debtor and Property Owners),

or rehabilitation fees described on Schedule 2.2 o of the APA, as such schedule may be

updated through Closing.

11.    The Cash Payment may be adjusted downward and reduced in accordance

with the formula set forth in Schedule 3.4 of the APA, if at Closing the Management Fees

pursuant to the Acquired Contracts ("Managed Units"), in the aggregate, are less than set

forth in Schedule 3.4 to the APA.  The reduction in the Cash Payment, if any, will be

subject to the $50,000 Cash Payment "floor" specified in Schedule 3.4 to the APA.  If the

adjustment formula set forth in Schedule 3.4 to the APA results in a decrease in the Cash

Payment of greater than $50,000 in the aggregate, for all Managed Units, Carroll will

have the right to terminate the APA and receive a refund of the Escrow Funds, or Carroll

may elect to proceed with the sale and purchase, with the Cash Payment reduced by no

more than $50,000.  The parties will reasonably cooperate, at least monthly, to confirm

actual and projected reductions in aggregate Management Fees and the effect on the Cash

Payment.

2927745-10

## IV.    Proposed Bidding Procedures

12.    Debtor has concluded that an auction process as proposed herein will generate the greatest possible sale price for the Acquired Assets.  Debtor seeks approval of the following bid procedures as the procedures most likely to maximize the realizable value of the Acquired Assets (the "Bidding Procedures").  An interested party (the "Bidder") must do the following no later than three (3) business days prior to the date of the Auction as established by entry by the Court of an order approving the Bidding Procedures (the "Bidding Procedures Order") in order to qualify and become an eligible bidder at the Auction (such deadline, the "Bidder Qualification Deadline").

13.    In order to be considered by the Court, any competing offer, or group of offers which collectively constitute a competing offer to that of Carroll (in either case, an "Alternative Transaction") must satisfy the following terms and conditions:

(A) the purchase price of the initial Alternative Transaction (including a combination of two or more transactions) (the "Initial Bid") must be at least $5,000 more than the Cash Payment (plus the Break-up Fee and Expense Reimbursement payable to Carroll), and any subsequent bids (or combination of bids) following the Initial Bid shall be in increments of at least $5,000 higher than the previous bid;

(B) a bidder shall as part of its bid, be required to submit to Debtor and Carroll a copy of the APA marked to show changes (including, without limitation, the price

- 9 -

and the specific assets to be purchased), along with any other bid package requirements (the "Marked Agreement");

(C) the bidder(s) under an Alternative Transaction must demonstrate, to the satisfaction of Debtor and the Court, in their discretion, evidence of its ability to conclude the transaction on the terms and conditions of the Marked Agreement, without material delay; and

(D) the bidder(s) of the Alternative Transaction must collectively provide to Escrow Agent, at or before the Auction, an Earnest Money Deposit (in collected funds) in the amount of at least $5,000.

14.    An alternative buyer ("Alternative Buyer") will not be considered by Debtor as qualified to participate in the Auction unless the bid provided by the Alternative Buyer includes the payment to Debtor of the Purchase Price (which amount may be adjusted to correspond with any increase or decrease in the Cash Payment as proposed by the Alternative Buyer), and includes payment of cash, assumption of Assumed Obligations, and any alternative to the Fee-Based Payments. Debtor's determination of the Highest and Best Offer shall be made on the basis of the most aggregate consideration provided to Debtor's bankruptcy estate.

15.    Debtor reserves the right to consider and evaluate bids from Alternative Buyers that include any alternative structure and any alternative consideration, so long as,

in Debtor's reasonable judgment, such Alternative Buyer's bid, in the aggregate, result in greater value to Debtor's estate than the Purchase Price.

16.    A bid by an Alternative Buyer will not be considered by Debtor as qualified for the Auction if (i) such bid is not received by Debtor and Carroll in writing by the Bidder Qualification Deadline, (ii) such bid or other information submitted by the bidder does not contain satisfactory evidence that the Person submitting it has sufficient financial wherewithal to consummate the purchase contemplated thereby, or (iii) such bid (either by itself or in combination with other bids for other Acquired Assets or other assets of Debtor, in the aggregate) is not supported by an earnest money deposit (or aggregate deposits) at least equal to the Earnest Money Deposit deposited pursuant to the APA.   Each bid which meets the foregoing criteria constitutes, as applicable, a "Qualifying Bid."

17.    If one or more Qualifying Bids are submitted in accordance with the Bid Procedures, Debtor will conduct the Auction two Business Days prior to the date set for the hearing on entry of the order approving the Sale (the "Sale Hearing").   At the Auction, Debtor shall have the right to select the highest and best bid from Carroll and any alternative buyer who submitted a Qualifying Bid (the "Highest and Best Bid"), subject to resolution of any dispute or objection to the Sale by the Court.

- 11 -

18.     At the Auction, Carroll shall have the right to submit further bids, and shall be entitled to credit bid its Break-Up Fee and Expense Reimbursement (as hereinafter defined), as provided for in the APA and approved by the Court.

19.     Only the Persons who submitted Qualified Bids and any other Person permitted to participate in the Auction by order of this Court may participate in the Auction.

20.     In consideration for Carroll having expended considerable time and expense in connection with the APA and the negotiation thereof and the identification and quantification of assets of Debtor, Debtor shall pay to Carroll the amount of $22,500 (the "Break-Up Fee and Expense Reimbursement") on the first Business Day following the date of consummation of an Alternative Transaction pursuant to a competing Qualifying Bid.   Notwithstanding the foregoing, the Break-Up Fee and Expense Reimbursement shall not be payable to Carroll if the APA is terminated pursuant to Sections 9.1 (a), (b), (c), (d), (f), (g), (h), or (i) of the APA.

21.     In the event that Debtor determines that a Qualifying Bid other than Carroll's represents the higher and better offer, Carroll shall be given the opportunity to make an overbid or an alternative competing offer in response thereto.

22.     In the event that Debtor or any representative of Debtor shall receive a Qualifying Bid, it shall afford Carroll an opportunity to participate in an Auction to be held in accordance with the terms of the Bidding Procedures Order and as noticed at the

- 12 -

2927745-10

offices of bankruptcy counsel for Debtor, Berger Singerman, P.A., 350 East Las Olas Blvd., Suite 1000, Fort Lauderdale FL 33301   At any Auction so held, bidding shall proceed in accordance with the Bidding Procedures Order.

23.     The hearing to confirm the Highest and Best Bid and to authorize the Sale of the Acquired Assets (the "Sale Hearing") shall be held by the Court as soon as reasonably practicable after the later of the Bidder Qualification Deadline and the conclusion of the Auction (in the event Qualifying Bids are submitted prior to the Bidder Qualification Deadline), but in no event more than ten (10) Business Days after the later of the Bidder Qualification Deadline and such conclusion of the Auction.

24.     Commencing immediately and continuing through the date of the Bidder Qualification Deadline, interested parties shall be afforded the opportunity to conduct due diligence regarding the Acquired Assets.   Debtor will provide reasonable access to Debtor's books and records, including the Acquired Contracts, prior to the Bidder Qualification Deadline.

25.     *Carroll Property Management, Inc. is a Qualified Bidder.*  Carroll Property Management, Inc. is a Qualified Bidder and has bid the amount set forth in the APA.

26.     Bidders are required to disclose, via an affidavit, any relationship to Debtor, any creditor, or any of such parties' principals.

- 13 -

27.     In the event there is no Qualified Bidder other than Carroll by the Bidder Qualification Deadline, the Acquired Assets may be transferred immediately to Carroll free and clear of liens, claims, liabilities, encumbrances or other interests, if any.

28.     *Time and Location of the Auction.*  The Auction, if necessary, shall be conducted on August 30, 2010 at 9:00 a.m. (Eastern time) and held at Berger Singerman, P.A., 350 East Las Olas Blvd., Suite 1000, Fort Lauderdale, FL 33301.  Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to participate at the Auction.  All Bidders must be physically present at the Auction and are urged to have counsel present.

29.     Bidding shall commence at the highest qualified bid above Carroll's Stalking Horse Bid.  Qualified Bidders may then submit subsequent bids in increments that exceed by at least $5,000.00 the combination of the Cash Payment plus the Break-up Fee and Expense Reimbursement payable to Carroll.  Bidding shall continue until there is only one bid for the Acquired Assets that Debtor, in its sole discretion, has determined to be the highest or best offer for the Acquired Assets (the "Final Successful Bid").  At the conclusion of the Auction, Debtor shall announce the Final Successful Bid.

30.     **Debtor requests that the Sale Hearing be conducted not later than September 1, 2010,** at which time Debtor will present either: (i) the Stalking Horse Bid, or (ii) the Final Successful Bid, for approval by the Court of such bid, pursuant to the provisions of Sections 363(b), 365(a) and 365(f)(2) of the Bankruptcy Code.

- 14 -

2927745-10

31.     Following the approval of the Final Successful Bid at the Sale Hearing, Debtor will be authorized to take all commercially reasonable and necessary steps to complete and implement the transaction contemplated by the Final Successful Bid.  The order approving the Final Successful Bid (the "Sale Order") will be effective immediately upon entry on the Court's docket notwithstanding Rule 6004(g) and 6006(d), Fed. R. Bankr. P., and Rule 62(a), Fed. R. Civ. P., to the extent applicable.

32.     Should the final successful Bidder not close upon the sale of the Acquired Assets by the Closing Date, its Earnest Money Deposit shall be paid to Debtor.

## V.      <u>Legal Authority for Relief Sought</u>

33.     Section 363(b)(1) authorizes a debtor-in-possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing.  11 U.S.C. § 363(b)(1) and 11 U.S.C. § 1107(a).  The standard applicable to a motion under section 363(b)(1) of the Bankruptcy Code is whether the proposed sale serves a sound business purpose. *See In re Ionosphere Clubs, Inc.,* 184 B.R. 648, 653 (S.D.N.Y. 1995); *In re Delaware & Hudson Railway. Co.,* 124 B.R. 169, 175 (D. Del. 1991).  Courts have held this standard is satisfied when: (a) there is a sound business purpose for the sale; (b) interested parties are provided with adequate and reasonable notice of the sale; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith.  *Delaware & Hudson Railway. Co.,* 124 B.R. at 176; *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987).

- 15 -

34.    Section 365(a) of the Bankruptcy Code authorizes a debtor to assume and assign or reject an executory contract or unexpired lease subject to the Bankruptcy Court's approval.  11 U.S.C. § 365(a).  A debtor's decision to assume and assign or reject an executory contract is subject to the "business judgment" test.  *In re Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987); *In re Chira,* 367 B.R. 888, 898 (S.D. Fla. 2007), *aff'd*, 567 F.3d 1307 (11th Cir. 2009).  The sole inquiry is whether assumption or rejection will benefit the estate.  *Id.*  In applying the "business judgment" test, courts show great deference to a debtor's decision to assume or reject an executory contract or unexpired lease.  *See In re Surfside Resort & Suites, Inc.,* 325 B.R. 465, 469 (Bankr. M.D. Fla. 2005) ("A court may not substitute its judgment for that of a debtor unless the debtor's decision that 'rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice.'") (quoting *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),* 756 F.2d 1043, 1047 (4th Cir. 1985)).

35.    Here, Debtor, in the exercise of its business judgment, has determined that the highest value that can be obtained for the Acquired Contracts is the proposed sale, assumption and assignment thereof to Carroll, subject to higher and better offers.  The proposed sale will be without any warranties, express or implied, on an AS IS, WHERE IS, AND WITH ALL FAULTS basis at Buyer's sole risk from and after the Closing.  For the avoidance of doubt, assumption by Debtor of the Acquired Contracts will be effective

- 16 -

only upon consummation of the transaction for which approval is sought herein and pursuant to the APA, including assignment of the Acquired Contracts to Carroll or other successful Bidder.

36.    Further, this Court has the statutory authority to direct the sale of the Acquired Assets free and clear of all interests with such interests to attach to the proceeds of the sale.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property under 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions are satisfied: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) such interest consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.  11 U.S.C. § 363(f).

37.    For purposes of this Motion, Debtor has no secured creditors.  The Acquired Assets may, therefore, be transferred free and clear of interests therein, if any. Pursuant to Section 363(f) of the Bankruptcy Code, Debtor requests, upon closing on a sale of the Acquired Assets, that the Acquired Assets be transferred, sold and delivered free and clear of all mortgages, security interests, conditional sale and/or title retention agreements, pledges, maritime and all other liens, judgments, demands, encumbrances,

- 17 -

2927745-10

easements, restrictions, constructive or resulting trusts, or charges of any kind or natures, and all debts arising in any way in connection with any acts of Debtor, claims (as that term is defined in Section 101(5) of the Bankruptcy Code), obligations, demands, guarantees, options, rights, contractual commitments, restrictions, interests, and any matters of any kind and nature, arising prior to the Closing Date or relating to acts occurring prior to the Closing Date (collectively, "Interests") and whether imposed by agreement, understanding, law or equity, or otherwise (collectively, "Claims") with all such Interests and Claims to attach to the net proceeds of the Acquired Assets in the order of their priority, with the validity, force and effect that they now have, if any, against the Acquired Assets, subject to the rights, claims, defenses, and objections, if any, of Debtor and all interested parties with respect to such Interests and Claims.

38.    It is common for substantially all of a debtor's assets to be offered for sale pursuant to an auction process.  *See, e.g., In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 514-15 (Bankr. N.D. Ala. 2002).  Additionally, a court may approve bidding procedures pursuant to Section 105(a) of the Bankruptcy Code, which authorizes a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  11 U.S.C. § 105(a).

39.    The Bidding Procedures are designed to encourage as many potential buyers as possible to submit bids and facilitate a fair and successful auction process.  Any interested party may submit a bid for the Acquired Assets provided only that they comply

- 18 -

with the Bidding Procedures set forth herein.  Debtor submits that these procedures are not onerous or restrictive requirements and will ideally generate multiple bids for the Acquired Assets.

40.     Moreover, Debtor submits that the Break-Up Fee and Expense Reimbursement (collectively, the "Buyer Protections") made under the APA and in connection with the solicitation of bids will also provide more benefit to Debtor's estate by encouraging earlier and higher bidding.  Debtor believes that the Buyer Protections encourage a potential purchaser to act as a "stalking horse," who invests time, money and effort to negotiate with a debtor despite the risks and uncertainties of the Chapter 11 bankruptcy process.

41.     In consideration of the benefits of the Buyer Protections, and the value of the Acquired Assets, Debtor submits that the Buyer Protections are reasonable and appropriate.  Numerous bankruptcy courts have approved breakup fees and expense reimbursements in similar circumstances.  *See, e.g., In re Piccadilly Cafeterias,* Case No. 03-27976 (RBR) (Bank. S.D. Fla. Dec. 4, 2003) (Court approved a break-up fee of $1.62 million in connection with $54 million sale); *In re Ameriserve,* Case No. 00-0358 (PJW) (Bankr. D. Del. Sept. 27, 2000) (Court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Fruit of the Loom. Inc.,* Case No, 99-4497 (PJW) (Bankr. D. Del. Dec. 11, 2001) (approving $25 million termination fee provision which was approximately 3.0% of transaction value); *In re FoxMeyer Corp. et al.,* Case

No. 96-1329 (HSB) through 96-1334 (HSB) (Bankr. D. Del., Oct. 9, 1996) (Court approved termination fee of 7.47%, or $6,500,000, in connection with $87,000,000 sale of substantially all of Debtors' assets).  The Buyer Protections therefore should be approved as reasonable and necessary to maximize the value of the Acquired Assets.

42.    Here, the maximum amounts payable by Debtor as a result of the Buyer Protections is $22,500, which is reasonable, appropriate and within Debtor's sound business judgment under the circumstances because it will serve to maximize the value that Debtor will recover through the sale of the Acquired Assets.

### VI.    Form and Manner of Notice of Bidding Procedures and Auction

43.    Bankruptcy Rule 2002(c)(1) provides that the notice of the proposed sale is to include a general description of the property, the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  Debtor will ensure that notice of the Sale and Bidding Procedures sought herein is timely submitted to creditors and other parties in interest entitled to notice.  A copy of the proposed notice is attached as **Exhibit "B"** hereto (the "Sale Notice").

44.    Debtor proposes to serve the Sale Notice, which includes a notice of sale providing the time and place of the proposed Auction (if one is held), the day and time of the Sale Hearing, and the time fixed for submitting objections to the sale (the "Sale Objection Deadline"), via First Class U.S. Mail, within three (3) business days after approval of the Bidding Procedures, upon the following parties:

- 20 -

      a.     All counter-parties to the Acquired Contracts;

      b.     All creditors and other parties in interest entitled to notice;

      c.     Any parties whom Debtor believes may have an interest in purchasing the Acquired Assets;

      d.     The United States Trustee's Office; and

      e.     All parties that have requested notice pursuant to Bankruptcy Rule 2002.

45.    Debtor believes that the foregoing notice is sufficient to provide effective notice of the Bidding Procedures, the Sale Hearing and the Auction to all parties in interest.

46.    Debtor requests that the Court find that the Sale Notice constitutes good and sufficient notice to creditors and parties in interest, and that no further notice of the Bidding Procedures, Sale Hearing or Auction is required.

## VII.    <u>Basis of Request for Emergency Relief</u>

47.    The Acquired Contracts are subject to termination by the counter-parties thereto in the event that MPI ceases to operate or is terminated as property manager.  As the Court is aware, MPI's related affiliates are in the process of selling or disposing their remaining properties, after which MPI will wind down pursuant to a liquidating plan and cease to operate as a going concern.  In order to preserve the maximum value of the Acquired Assets, the sale, assumption and assignment of the Acquired Contracts must

- 21 -

take place prior to any such potential termination of the Management Contracts or cessation of MPI's business. Therefore, it is critical that Debtor be able to conduct the Auction and close on a sale as soon as possible. Failure to do so will result not only in a potential decrease in the Purchase Price, but also in a diminution of the value of the Acquired Assets, resulting in a decrease of the benefit that may be realized by Debtor's estate and its creditors.

48.     Pursuant to Bankruptcy Rule 6004(a), notice of the proposed sale of property outside the ordinary course of business is to be provided pursuant to Bankruptcy Rule 2002(a)(2), (c)(1) and (k). These provisions of Bankruptcy Rule 2002 provide that all creditors receive at least twenty-one (21) days' notice of a sale of estate assets outside the ordinary course of business, unless the court for cause shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Pursuant to Fed. R. Bankr. P. 9006(c)(1), the Court for cause shown may in its discretion order the period reduced.

49.     Debtor seeks to shorten the notice period in order to allow the Auction and Sale to take place prior to any potential termination of Debtor's Management Contracts.

50.     As stated herein above, Debtor seeks approval of this Motion in conjunction with shortened notice and an expedited sale process. Debtor proposes the following deadlines:

        a.  that the initial hearing on an emergency basis to enter the Bidding

- 22 -

Procedures Order take place on or before Tuesday, August 10, 2010 (subject to the Court's calendar);

b.  that the deadline for objections to entry of the Bidding Procedures Order be filed and served no later than the day preceding the hearing on approval of the Bidding Procedures;

c.  that the Bidder Qualification Deadline be Wednesday, August 25, 2010;

d.  that the Auction, if necessary, be conducted on Monday, August 30, 2010; and

e.  that the Sale Hearing to approve the Sale to the final successful Bidder and to consider any objections to the manner in which the Sale was conducted, be set for Wednesday, September 1, 2010.

**WHEREFORE**, Debtor respectfully requests that the Court hold an initial hearing, on an emergency basis, to enter the Bidding Procedures Order substantially in the form attached as **Exhibit "C"** hereto:

A.    Authorizing Debtor to sell the Acquired Assets;

B.    Approving the form of the APA;

C.    Approving the Break Up Fee and Expense Reimbursement in the total amount of $22,500;

D.    Approving the Bidding Procedures set forth herein;

E.    Shortening the notice period for the Sale;

- 23 -

2927745-10

F.      Setting the Auction for Monday, August 30, 2010;

G.      Setting the Sale Hearing for not later than Wednesday, September 1, 2010,

subject to the Court's calendar

H.      Approving the form and manner of notice of the Bidding Procedures and

the Sale as set forth herein; and

I.      Granting such other and further relief as may be just and proper.

Dated: August 3, 2010                    Respectfully submitted,

/s/ Brian K. Gart_____
Brian K. Gart
Florida Bar No. 381152, *admitted pro hac vice*
bgart@bergersingerman.com
Paul A. Avron
Florida Bar No. 0050814, *admitted pro hac vice*
pavron@bergersingerman.com
BERGER SINGERMAN, P.A.
350 East Las Olas Boulevard, Suite 1000
Ft. Lauderdale, FL  33301
Telephone:  (954) 525-9900
Facsimile:   (954) 523-2872

and

2650 N. Military Trail, Suite 240
Boca Raton, FL 33431
Telephone:  (561) 241-9500
Facsimile:  (561) 998-0028

- 24 -

*and*

s/ Jimmy C. Luke, II_____
Jimmy C. Luke, II
jluke@foltzmartin.com
Georgia Bar No. 191817
FOLTZ MARTIN, LLC
5 Piedmont Center, Suite 750
Atlanta, GA 30305-1541
Telephone:  (404) 231-9397
Facsimile:  (404) 237-1659
*Co-Counsel for Debtors*

- 25 -